1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HENDRIK BLOCK,                          No.  1:20-cv-01691-DAD-BAM

12              Plaintiff,

13        v.                                 ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS
14   TULE RIVER TRIBAL COUNCIL, et al.,
                                             (Doc. No. 15)
15              Defendants.

16

17        This matter is before the court on the motion to dismiss for lack of subject matter

18   jurisdiction filed on behalf of defendants Tule River Tribal Council ("Tribal Council") and Tule

19   River Economic Development Corporation dba Eagle Feather Trading Post #2 ("TREDC") on

20   May 24, 2021.[1]  (Doc. No. 15.)  Pursuant to General Order No. 617 addressing the public health

21   emergency posed by the COVID-19 pandemic, the motion was taken under submission on the

22   _____
     [1] The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
23   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  While that situation was partially addressed by
24   the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December
     17, 2021, another vacancy on this court with only six authorized district judge positions was
25   created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over
     approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation
26   resulted in the court not being able to issue orders in submitted civil matters within an acceptable
     period of time and continues even now as the undersigned works through the predictable backlog.
27   This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the
     parties and their counsel.
28

                                                 1

1    papers.  (Doc. No. 16.)  For the reasons explained below, the court will grant defendants' motion

2    to dismiss.

3                                              **BACKGROUND**

4           Plaintiff Hendrick Block initiated this action on November 25, 2020, alleging that

5    defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*

6    ("ADA"), California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51–52 ("Unruh Act"), and

7    California Health and Safety Code §§ 19953, 19955–56, 19959.  (Doc. No. 1 at ¶¶ 16–46.)  In his

8    complaint plaintiff alleges as follows.  Plaintiff "is substantially limited in his ability to walk, and

9    must use a cane, walker, wheelchair, or electric scooter for mobility."  (*Id.* at ¶ 8.)  The defendant

10   Tribal Council is a federally recognized Indian Tribe, and along with defendant TREDC, the

11   defendants own and operate a business called the Eagle Feather Trading Post #2 (the "Facility").[2]

12   (*Id.* at ¶¶ 1–2, 7.)  Plaintiff visited defendants' Facility on or about August 18, 2020 to purchase

13   beverages and snacks and encountered several physical and intangible barriers that interfered with

14   or denied his ability to "enjoy the goods, services, privileges and accommodations offered at the

15   Facility."  (*Id.* at ¶ 10.)  These barriers included, among other things, poorly placed signage for

16   designated accessible parking stalls; uneven concrete leading to the Facility's entrance; broken

17   tiles and flooring inside the Facility; a cluttered transaction counter; a toilet stall lacking

18   "sufficient clearances"; a difficult to grasp bathroom stall lock; and inoperable faucet controls.

19   (*Id.*)

20          On May 24, 2021, defendants filed the pending motion to dismiss for lack of subject

21   matter jurisdiction.  (Doc. No. 15.)  Defendants argue that they are immune from plaintiff's

22   lawsuit under tribal sovereign immunity.  (Doc. No. 15-1 at 5.)  In support of defendants' pending

23   motion, they included a declaration of Charmaine A. McDarment, the General Counsel to the

24   /////

25   /////

26   /////

27
     ───────────────────────
28   [2]  Based on plaintiff's opposition brief, it appears that the Facility is a gas station with a
     convenience store.  (Doc. No. 17 at 2.)

                                                     2

1  Tule River Indian Tribe (the "Tribe").[3]  (Doc. No. 15-2.)  Attached to Ms. McDarment's

2  declaration are the following exhibits:  (i) a copy of the U.S. Bureau of Indian Affairs' (BIA) list

3  of federally recognized Indian tribes from January 30, 2018 (Exhibit A); (ii) portions of the Tule

4  River Indian Tribe's Constitution and Bylaws (Exhibit B); and (iii) several "approval documents"

5  purportedly evidencing that defendant TREDC is a federally-chartered corporation pursuant to 25

6  U.S.C. § 5124, wholly-owned and formed by the Tribe (Exhibit C).  (Doc. No. 15-2 at ¶¶ 4–6.)

7  There were two different approval documents included in Exhibit C to Ms. McDarment's

8  declaration.  The first is an October 31, 2019 letter from the BIA to the Tribe's chairman

9  informing the Tribe that the BIA had approved the federal charter of incorporation for defendant

10  TREDC.  (Doc. No. 15-2 at 19–20.)  Attached to the BIA's October 31, 2019 letter was a signed

11  Certificate of Approval and a Charter of Incorporation for the Tule River Economic Development

12  Corporation ("charter of incorporation").  (*Id.* at 21–30.)  The second approval document was a

13  resolution (Resolution No. FY2020-09) passed by the Tribe on November 12, 2019, which

14  acknowledged receipt of the October 31, 2019 BIA letter and documented defendant Tribal

15  Council's approval of the federal charter for defendant TREDC.  (*Id.* at 18–19.)

16       On June 22, 2021, plaintiff filed a brief in opposition to the pending motion to dismiss in

17  which he argued that defendants misconstrue Supreme Court precedent regarding tribal sovereign

18  immunity, that tribal sovereignty immunity cannot apply because it would mean plaintiff (and any

19  other disabled individual) could not sue to vindicate their civil rights, and that because plaintiff is

20  acting as a private attorney general—and tribal sovereign immunity does not protect tribes from

21  suit by the government—tribal sovereign immunity does not apply here.  (Doc. No. 17.)  Plaintiff

22  also included his counsel's declaration with attached exhibits and a request for judicial notice in

23

24  [3] Defendants moving papers clarify that the complaint "names the Tribal Council as a 'federally
   recognized Indian Tribe,' rather than naming the Tribe itself."  (Doc. No. 15-1 at 6 n.1.)  As
25  defendants explained, "[defendant] Tribal Council is an elected governing body of the Tribe, not
   a separate entity."  (*Id.*)  Plaintiff's counsel responded in a declaration filed in support of her
26  opposition brief that defendant Tribe Council was named in the lawsuit because the deed for the
   Facility "lists the grantee as 'Tule River Tribal Council, a federally recognized Indian Tribe.'"
27  (Doc. No. 17 at 3 n.1.)  The court will address this issue further below, but the parties do not
   contend that this discrepancy affects the court's resolution of the pending motion.
28

1   support of his opposition to the pending motion to dismiss.  (Doc. Nos. 17-1, 17-2, 17-3.)

2       Defendants filed their reply on June 29, 2021, contending that in his opposition plaintiff

3   misstates the holding of two Supreme Court decision on tribal sovereign immunity and that courts

4   have routinely rejected the other arguments advanced by plaintiff.  (Doc. No. 19.)

5   **LEGAL STANDARD**

6       Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

7   motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

8   claims alleged in the action.  *See* Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If

9   the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss

10   the action.").  In a Rule 12(b)(1) motion, a defendant may either assert a "facial" challenge to the

11   federal court's exercise of jurisdiction, or a "factual" one.  *Courthouse News Serv. v. Planet*, 750

12   F.3d 776, 780 & n.3 (9th Cir. 2014) ("A 'facial' attack asserts that a complaint's allegations are

13   themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's

14   allegations, though adequate on their face to invoke jurisdiction, are untrue."); *see also Thornhill*

15   *Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  Under a facial attack,

16   the court must consider the allegations of the complaint as true, whereas under a factual attack,

17   the court determines the facts for itself.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

18   2014).  Here, defendants are asserting a factual challenge to the complaint because their pending

19   motion relies on a declaration and exhibits they have submitted which are not attached to

20   plaintiff's complaint.  (*See* Doc. No. 15-2.)

21       Defendants argue that they are immune from suit by virtue of their tribal sovereign

22   immunity.  (*See* Doc. No. 15-1.)  "The issue of tribal sovereign immunity is 'quasi jurisdictional'

23   in the sense that it 'may be asserted at any time.'"  *Barron v. Alaska Native Tribal Health*

24   *Consortium*, 373 F. Supp. 3d 1232, 1237 (D. Alaska 2019) (quoting *Pistor v. Garcia*, 791 F.3d

25   1104, 1111 (9th Cir. 2015)).  "Although sovereign immunity is only quasi-jurisdictional in nature,

26   Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit."  *Pistor*, 791

27   F.3d at 1111; *see also Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017)

28   ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a

1   Rule 12(b)(1) or 12(b)(6) motion.").  "In the context of a Rule 12(b)(1) motion to dismiss on the

2   basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction has the burden

3   of proving its existence,' i.e., that immunity does not bar the suit." *Pistor*, 791 F.3d at 1111

4   (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)).  In resolving such a motion, "no

5   presumptive truthfulness attaches to a plaintiff's allegations" and "a district court may hear

6   evidence regarding jurisdiction and resolve factual disputes where necessary." *Id.* (internal

7   quotations and brackets omitted); *see also Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th

8   Cir. 2014); *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 895 (N.D.

9   Cal. 2011).

10                                          **ANALYSIS**

11  **A.      Tribal Sovereign Immunity**

12          "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority

13  over their members and territories.  Suits against Indian tribes are thus barred by sovereign

14  immunity absent a clear waiver by the tribe or congressional abrogation." *Jamul Action Comm. v.*

15  *Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020) (quoting *Okla. Tax Comm'n v. Citizen Band*

16  *Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)); *see also Michigan v. Bay Mills*

17  *Indian Cmty.*, 572 U.S. 782, 788–89 (2014) ("[W]e have time and again treated the 'doctrine of

18  tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional

19  authorization (or a waiver).").  "In addition, there is a strong presumption against waiver of tribal

20  sovereign immunity, and any congressional abrogation of tribal sovereign immunity must be

21  unmistakably clear." *Grondal v. United States*, 37 F.4th 610, ___, 2022 WL 2112793, at *5 (9th

22  Cir. June 13, 2022) (internal quotation omitted); *see also Oertwich v. Traditional Vill. of Togiak*,

23  29 F.4th 1108, 1117 (9th Cir. 2022) ("Accordingly, a court must find that Congress has spoken

24  'unequivocally' to rescind tribal sovereign immunity in a particular scenario and a tribe only

25  waives its immunity if it does so expressly." (internal citation omitted)).

26          "Critically, this '[t]ribal sovereign immunity extends to both the governmental and

27  commercial activities of a tribe, whether undertaken on or off its reservation.'" *Grondal*, 2022

28  WL 2112793, at *5 (quoting *Jamul Action Comm.*, 974 F.3d at 991)*.*  "Tribal sovereign immunity

                                                    5

1    not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the

2    tribe." *White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014).  As such, it is "settled

3    law" in the Ninth Circuit "that tribal corporations acting as an arm of the tribe enjoy the same

4    sovereign immunity granted to a tribe itself." *Dine Citizens Against Ruining Our Env't v. Bureau*

5    *of Indian Affs.*, 932 F.3d 843, 856 (9th Cir. 2019) (quoting *Cook v. AVI Casino Enterprises, Inc.*,

6    548 F.3d 718, 725 (9th Cir. 2008)); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1046

7    (9th Cir. 2006).  To determine "whether an entity is entitled to sovereign immunity as an 'arm of

8    the tribe,'" courts examine several factors including:

9
10
11

> (1) the method of creation of the economic entities; (2) their
> purpose; (3) their structure, ownership, and management, including
> the amount of control the tribe has over the entities; (4) the tribe's
> intent with respect to the sharing of its sovereign immunity; and (5)
> the financial relationship between the tribe and the entities.

12    *White*, 765 F.3d at 1025 (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino &*

13    *Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)).

14    **B.      Whether Defendants Are Entitled to Tribal Sovereign Immunity**

15          As an initial matter, the U.S. Department of Interior has recognized the Tule River Indian

16    Tribe (the "Tribe") as a tribe under federal law.  *See* 83 Fed. Reg. 4235-02 (Jan. 30, 2018), 2018

17    WL 582952; (Doc. No. 15-2 at 10).  Defendants first contend that defendant TREDC satisfies the

18    test articulated by the Ninth Circuit to determine if it is an "arm of the tribe" entitled to tribal

19    sovereign immunity.  (Doc. No. 15-1 at 9–12) (citing *White*, 765 F.3d at 1025).

20          The court agrees with defendants' contention in this regard.  Consideration and

21    application of the *White* factors results in the conclusion that defendant TREDC is an arm of the

22    Tribe.  As argued in defendants' pending motion, defendant TREDC is a federally chartered

23    corporation under 25 U.S.C. § 5124, wholly owned and formed by the Tribe, as documented in a

24    resolution adopted by the Tribe.[4]  (Doc. Nos. 15-1 at 10; 15-2 at 17–18) (Tribe's Resolution No.

25    _____

26    [4]  Under § 5124 "[t]he Secretary of the Interior may, upon petition by any tribe, issue a charter of
incorporation to such tribe," which "shall not become operative until ratified by the governing
body of such tribe."  25 U.S.C. § 5124.  This "charter may convey to the incorporated tribe the

27    power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose
of property of every description, real and personal. . . , and such further powers as may be

28    incidental to the conduct of corporate business, not inconsistent with law[.]" *Id.*

1    FY2020-09 approving defendant TRDC's charter of incorporation).  Not only does the Tribe hold

2    "one-hundred percent of the voting stock issued in" defendant TREDC, but it also retains a host

3    of other rights, such as the right to all assets upon TREDC's dissolution, the right to examine

4    TREDC's books and records, and the exclusive right to amend TREDC's charter of incorporation,

5    among other rights.  (*Id.* at 11.)  Quoting from defendant TREDC's charter of incorporation,

6    defendants contend that TREDC's purpose "is to generate income to create profits to be used to

7    supplement the revenues of the Tribal government, and to provide essential governmental

8    services to those within its jurisdiction, including for the health, education and welfare of tribal

9    members, infrastructure, and to further economic development."  (*Id.* at 10.)  The charter of

10    incorporation also explicitly shows the Tribe's intention to share its sovereign immunity with

11    defendant TREDC.  (*Id.* at 11) ("The [TREDC] . . . shall be an instrumentality of the Tribe with

12    the same privileges and immunities under federal law as the Tribe . . . including . . .

13    immunity[.]").[5]  The court has closely reviewed Ms. McDarment's declaration and its attached

14    exhibits and finds that defendants' representations on this issue are accurate and persuasive.  (*See*

15    Doc. No. 15-2.)  Thus, the court concludes that consideration of the factors noted above weigh in

16    favor of finding that defendant TREDC is an arm of the Tribe.  *See White*, 765 F.3d at 1025

17    (finding the repatriation committee to be an arm of several tribes where it was created by

18    resolutions from each tribe, was fully funded by the tribes, and operated under a process dictated

19    by the tribes); *Allen*, 464 F.3d at 1047 (finding there was "little doubt" that a casino owned and

20    operated by tribe functioned as an arm of the tribe).

21        As for defendant Tribal Council, defendants contend that they have shown that defendant

22    Tribal Council is "an elected governing body of the Tribe, not a separate entity" because the

23    Tribe's Constitution and Bylaws provide that defendant Tribal Council is "[t]he governing body

24    of the Tule River Tribe."  (Doc. Nos. 15-1 at 6 n.1; 15-2 at 14.)  This showing indicates that

25    defendant Tribal Council is literally a subdivision of the Tribe itself, specifically, the Tribe's

26

27    
[5]  The charter of incorporation also provides that defendant TREDC has no power to waive immunity on behalf of the Tribe and can only waive its own immunity if "it does so explicitly pursuant to resolution of the Board of Directors."  (Doc. No. 15-1 at 13.)  No such resolution is before the court, nor does plaintiff contend that one exists.

28

1   decision-making and governing body.  Plaintiff does not dispute these facts, nor does he name

2   any members of the Tribal Council as defendants in his lawsuit.  (*See* Doc. No. 17 at 2–3 & n.1.)

3   In fact, plaintiff even affirmatively alleges in his complaint that defendant Tribal Council is "a

4   federally recognized Indian Tribe."  (Doc. No. 1 at ¶ 2.)  In his opposition to the pending motion

5   plaintiff states that he sued defendant Tribal Council because it was listed as the grantee on the

6   deed for the Facility.  (*See* Doc. No. 17 at 3 n.1.)  The court concludes that defendant Tribal

7   Council is no different than the Tribe itself, and is thus immune from plaintiff's lawsuit under

8   tribal sovereign immunity.[6]  *See Colmar v. Jackson Band of Miwuk Indians*, No. 2:09-cv-0742-

9   DAD, 2011 WL 2456628, at \*2 (E.D. Cal. June 15, 2011) ("[T]he inclusion of a group of Indians

10  on the Federal Register list of recognized tribes would ordinarily suffice to establish that the

11  group is a sovereign power entitled to immunity from suit." (quoting *Cherokee Nation of*

12  *Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).

13      In plaintiff's opposition, he also does not challenge defendants' evidence or arguments

14  that defendant TREDC is an arm of the tribe, that defendant Tribal Council is the Tribe itself (not

15  a separate entity), or that the Tribe or Congress did not waive tribal sovereign immunity.  (*See*

16  Doc. No. 17).  Instead, plaintiff seeks to carry his burden merely by arguing that tribal sovereign

17  immunity is limited to contractual claims and absent this suit, plaintiff would not have any other

18  remedy for the violation of his civil rights.  (*Id.* at 4–6.)  Alternatively, plaintiff contends his

19  private action should be treated the same as a suit brought by the federal government, which is

20  not barred from suing Indian tribes.  (*Id.* at 6–7.)

21      Plaintiff first argues that Supreme Court precedent dictates that tribal sovereign immunity

22  is limited to contractual claims.  (*Id.* at 4–5) (citing *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*,

23  523 U.S. 751 (1998) and *Bay Mills*, 572 U.S. 782).  According to plaintiff, there is a

24  "fundamental" difference between the contractual claims at issue in *Kiowa* and *Bay Mills* and

25

26  [6] Even if plaintiff intended to sue individual members of defendant Tribal Council, those
    members are most likely also immune from this suit because tribal officials acting in their
27  capacity also enjoy tribal sovereign immunity.  *See Miller v. Wright*, 705 F.3d 919, 928 (9th Cir.
    2013) ("Tribal sovereign immunity extends to tribal officials when acting in their official capacity
28  and within the scope of their authority.").

1    plaintiff's disability-related civil rights claims here.  (*Id.* at 15.)  Notably, plaintiff contends he

2    "had no way of knowing" when he entered the Facility that it was owned by the Tribe and that

3    without this suit, he would have no recourse to vindicate his rights.  (*Id.*)

4            The court finds that nothing in the two Supreme Court cases cited by plaintiff limits tribal

5    sovereign immunity to contract claims.  It is true that *Bay Mills* and *Kiowa* both involved the

6    Court upholding tribal sovereign immunity in the context of tribe's facing contractual claims; in

7    *Kiowa*, a private party sued a tribe in state court for defaulting on a promissory note; in *Bay Mills*,

8    the state of Michigan sued a tribe for violating a gaming compact.  *See Kiowa*, 572 U.S. at 753–

9    54; *Bay Mills*, 572 U.S. at 785–86.  Plaintiff also calls attention to a footnote in the *Bay Mills*

10   decision indicating that the Court has never "specifically addressed . . . whether immunity should

11   apply in the ordinary way if a tort victim, or other plaintiff who has not chosen to deal with a

12   tribe, has no alternative way to obtain relief for off-reservation commercial conduct." *Bay Mills*,

13   572 U.S. at 799 n.8.  But as the Supreme Court also explained, "[t]he argument that such cases

14   would present a 'special justification' *for abandoning precedent* is not before us," *id.* (emphasis

15   added), suggesting that current precedent would dictate no different outcome in the context of a

16   case involving non-contractual causes of action brought against a tribe.[7]  Indeed, in the *Bay Mills*

17   decision the Supreme Court reiterated the longstanding precedent that the "baseline position . . . is

18   tribal immunity" and only when Congress unequivocally expresses a contrary purpose will that

19   immunity be abrogated.  *Bay Mills*, 572 U.S. at 790; *see also Kiowa*, 523 U.S. at 754–55 ("As a

20   matter of federal law, an Indian tribe is subject to suit *only where* Congress has authorized the suit

21   or the tribe has waived its immunity." (emphasis added)).  As such, plaintiff's bare assertions that

22   this court should find a "special justification" for not applying tribal immunity here because the

23

---

24   [7] Moreover, in *Kiowa*, the court noted that "[tribal] immunity can harm those who are unaware
     that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in
25   the matter, as in the case of tort victims," but nonetheless declined to "confine it to reservation or
     to noncommercial activities." *Kiowa*, 523 U.S. at 758 ("[W]e defer to the role Congress may
26   wish to exercise in this important judgment.").  In fact, it was the dissenting opinion that
     expressed the view, in part, that tribal immunity was "unjust . . . with respect to tort victims"
27   because "nothing in the Court's reasoning limits the rule to lawsuits arising out of voluntary
     contractual relationships." *Id.* at 766 (J., Stevens, dissenting).  Thus, the Supreme Court's
28   decision in *Kiowa* also strongly suggests that its holding was not limited to contractual claims.

1    Facility is in a "strategic location . . . miles away from any alternative gas station[s]" or that

2    plaintiff "will have no other remedy to enforce his civil rights," are simply not relevant to

3    resolution of the legal issue posed by the pending motion.[8]  (Doc. No. 17 at 6.)  In fact, since *Bay*

4    *Mills*, the Ninth Circuit has rejected plaintiff's argument in the context of tort victims, noting that

5    it has "held that tribal sovereign immunity bars tort claims against an Indian tribe, and that

6    remains good law." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 562–63 & n.8 (9th Cir.

7    2016) (upholding the district court's finding that plaintiffs' claims for fraud in the inducement,

8    material misrepresentation, and promissory estoppel were barred by tribal sovereign immunity).

9          Without any evidence of Congressional abrogation or a tribal waiver, binding precedent

10   requires that this court uphold defendants' invocation of tribal sovereign immunity.  *See Bay Mill*,

11   572 U.S. at 785.  Thus, plaintiff's arguments to the contrary are unavailing.[9]

12          In the alternative, plaintiff contends that the federal government's ability to sue Indian

13   tribes should extend to private attorney generals—i.e., private plaintiffs—enforcing the ADA.

14   (Doc. No. 17 at 6–7.)  Plaintiff argues that the ADA's broad purpose shows that Congress

15   intended that it apply to Indian tribes, including the public accommodations that they offer.  (*Id.*

16   at 6.)  Plaintiff then reasons that because private plaintiffs are an important enforcement

17

18   [8]  Accordingly, plaintiff's request that judicial notice be taken of two Google maps showing the
     Facility's location in relation to the Tribe's reservation and the next nearest gas station is denied
19   as having been rendered moot by this order.  (Doc. No. 17-3.)

20   [9]  Plaintiff also relies on a district court decision that interpreted *Kiowa* as leaving open the
     question of tribal immunity as to noncontractual claims.  (Doc. No. 17 at 5) (citing *Hollynn D'Lil*
21   *v. Cher-Ae Heights Indian Cmty. of Trinidad Rancheria*, No. 3:01-cv-01638-TEH, 2002 WL
     33942761, at *5 (N.D. Cal. Mar. 11, 2002) (holding that tribal sovereign immunity did not bar an
22   ADA claim brought against an off-reservation inn owned by tribe)).  First, the district court's
     decision in that case is not binding on this court.  Second, it would appear that the holding in
23   *D'Lil* is potentially suspect because the court in that case erroneously balanced the "strong federal
24   policy" in favor of enforcing the ADA against the tribe's interest in sovereign immunity,
     concluding that tribal immunity did not apply to all noncontractual off-reservation conduct.  *See*
25   *D'Lil*, 2002 WL 33942761, at *8.  That conclusion, however, would appear to be at odds with the
     Supreme Court's holding in *Bay Mills* that "Indian tribes have immunity even when a suit arises
26   from off-reservation commercial activity[.]"  *Bay Mills*, 572 U.S. at 785.  The undersigned finds
27   no basis in precedent for the court to engage in a balancing of competing interests in this context.
     On that basis, the undersigned does not find the decision in *D'Lil* to be persuasive and declines to
28   follow it in resolving the pending motion.

1   mechanism for the ADA, they are acting as the federal government itself and thus are not barred

2   by tribal sovereign immunity.  (*Id.*)

3        Plaintiff's somewhat novel argument in this regard also lacks merit.  It is true that tribal

4   sovereign immunity does not protect Indian tribes from suits brought by the federal government.

5   *See Quileute Indian Tribe*, 18 F.3d at 1459–60.  It is also true that, as a statute of general

6   applicability, Title III of the ADA (the portion of the ADA concerning public accommodations)

7   likely governs Indian tribes and tribe-run businesses.  *See Fla. Paraplegic, Ass'n, Inc. v.*

8   *Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1129–30 (11th Cir. 1999) (applying Ninth

9   Circuit authority in concluding that Title III of the ADA applies to Indian tribes, but also holding

10  that nothing in the ADA expressed Congress' intent to abrogate tribal sovereign immunity).

11  Nonetheless, plaintiff has failed to cite any authority for the proposition that plaintiffs' suing

12  under Title III of the ADA are entitled to the same status as the federal government when

13  bringing an action against an Indian tribe.  Notably, plaintiff's argument ignores binding

14  precedent:  "Indian tribes have immunity even when a suit arises from off-reservation commercial

15  activity," absent an unequivocal expression of Congressional abrogation or tribal waiver.  *Bay*

16  *Mills*, 572 U.S. at 785; *see also Grondal*, 2022 WL 2112793, at *5.  Here, plaintiff does not assert

17  that there has been abrogation or waiver of tribal sovereign immunity, let alone even suggest a

18  showing that would carry his burden in that respect.  Finally, courts that have examined whether

19  Congress expressed its clear intent to abrogate tribal sovereign immunity for plaintiffs filing

20  actions under Title III of the ADA have concluded that Congress did not do so.  *See Fla.*

21  *Paraplegic*, 166 F.3d at 1131–34 (concluding "that Congress did not contemplate that Indian

22  tribes would be subject to private lawsuits for violating Title III of the ADA"); *Drake v. Salt*

23  *River Pima-Maricopa Indian Cmty.*, 411 F. Supp. 3d 513, 520 (D. Ariz. 2019) (holding that a

24  plaintiff's claims brought under the ADA, as well as state law claim, were barred by tribal

25  sovereign immunity where there was no clear waiver from Congress or the tribe itself).  The

26  /////

27  /////

28  /////

11

1    court therefore finds that plaintiff's argument in this regard is unavailing.[10]

2          For the foregoing reasons, the court concludes that plaintiff has failed to carry his burden

3    to show that the defendants are not entitled to tribal sovereign immunity.  Accordingly, the court

4    will grant defendants' pending motion to dismiss.  *See People of State of Cal. ex rel. Cal. Dep't of*

5    *Fish & Game v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979) ("Sovereign

6    immunity involves a right which courts have no choice, in the absence of a waiver, but to

7    recognize.").  The court also will not grant plaintiff leave to file an amended complaint because

8    the granting of such leave would be futile due to both named defendants immunity from suit.  *See*

9    *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

10                                      **CONCLUSION**

11         For the reasons set forth above, the court grants defendants' motion to dismiss (Doc. No.

12   15) without leave to amend.  The Clerk of the Court is directed to close this case.

13   IT IS SO ORDERED.

14       Dated:   **July 6, 2022**                          _____

15                                              UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

---

25   [10]  Tribal sovereign immunity also applies to plaintiff's state law claims because immunity is "a
     matter of federal law not subject to diminution by states."  *Bay Mills*, 572 U.S. at 789.  Thus, the
26   state of California has no authority to abrogate defendants' tribal immunity, nor is there any
     assertion or evidence by plaintiff that Congress abrogated tribal immunity with respect to the state
27   law claims asserted here.  *See Drake*, 411 F. Supp. 3d at 521 (dismissing state law claims because
     "[t]he same analysis that precludes Plaintiff's federal claims also precludes her claims under state
28   tort law").